FILED'10 APR 28 10:24USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL WORTHINGTON,                )    Civil No. 09-51-JE
                                    )
                        Plaintiff,  )    FINDINGS AND
                                    )    RECOMMENDATION
            v.                      )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
                        Defendant.  )
_____)

Tim Wilborn
Attorney at Law
P.O. Box 2768
Oregon City, OR 97045

      Attorney for Plaintiff

Kent S. Robinson
Acting U.S. Attorney
Adrian L. Brown
Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

David Morado
Regional Chief Counsel
L. Jamala Edwards
Special Asst. U.S. Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Michael Worthington brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a decision of the Commissioner of Social Security (the

Commissioner) denying his applications for Disability Insurance Benefits (DIB) and

Supplemental Security Income disability benefits (SSI) pursuant to 42 U.S.C. §§ 416 and

423. For the reasons set out below, the Commissioner's decision should be reversed, and this

action should be remanded to the Social Security Administration (the Agency) for an award

of benefits.

### Procedural Background

Plaintiff filed applications for DIB and SSI on May 26, 2005. After these applications

were denied initially and upon reconsideration, plaintiff timely requested a hearing before an

Administrative Law Judge (ALJ).

On May 1, 2008, a hearing was held before ALJ Timothy Terrill. On June 27, 2008,

ALJ Terrill issued a decision finding that plaintiff was disabled, but that, because he had not

met the burden of establishing that his substance abuse was not a "contributing factor

material to his disability," he was not entitled to an award of benefits. That decision became

FINDINGS AND RECOMMENDATION - 2

the final decision of the Commissioner on November 11, 2008, when the Appeals Council denied plaintiff's timely request for review. In the present action, plaintiff seeks review of that decision.

## Factual Background

Plaintiff was born on September 8, 1957, and was 50 years old at the time of his hearing before the ALJ. He earned a GED, and served in the Navy from January 2, 1975, to June 30, 1977. Plaintiff has worked in a variety of positions, and his past relevant work includes work as a maintenance mechanic, equipment rental clerk/repairer, and service station attendant/cashier. He last engaged in substantial gainful employment in 2004. Plaintiff has a significant history of substance abuse. On November 24, 2006, the Veterans Administration (VA) determined that plaintiff was entitled to nonservice-connected disability benefits.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

FINDINGS AND RECOMMENDATION - 3

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national

FINDINGS AND RECOMMENDATION - 4

economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## Medical Record

In a chart note dated March 8, 2004, Catherine Walker, a Registered Nurse, reported that a splenectomy had been performed on plaintiff following a fall of 47 feet. The fall, which occurred in 1999, resulted in a hernia at the distal end of the incision which was not reducible. Plaintiff injured his shoulder in the fall, and experienced some paresthesias on the dorsal surface of his left arm. Audible popping noise was noted with extension and flexion of plaintiff's arms. Plaintiff reported numbness and tingling in a sciatica pattern in his left leg and foot. He was again treated for chronic back and shoulder pain on March 30, 2004.

Plaintiff was examined by John Santa, M.D., on June 3, 2004. Dr. Santa found reduced range of motion in plaintiff's left shoulder, found that plaintiff was unable to fully abduct his left arm overhead, and noted that plaintiff's left AC joint was prominent. Plaintiff reported that his left shoulder was painful with any lifting.

X-rays taken on September 22, 2004, showed a left AC joint separation in plaintiff's left shoulder and mild, s-shaped scoliosis of plaintiff's thoracic spine. Marked degeneration of plaintiff's cervical spine at C6-7 was observed, and fusion of the C5-6 vertebral bodies was noted.

On November 11, 2004, Dr. Santa restarted plaintiff's Prozac prescription because plaintiff was experiencing worsening symptoms of depression. Plaintiff reported a steady ache in his mid and upper back, intermittent pain in his left shoulder, and continued numbness in his left arm and leg.

On February 2, 2005, Joseph Garrow, a Veterans' Administration (VA) vocational rehabilitation specialist, noted that plaintiff had been fired from his vocational rehabilitation job at a gas station after two weeks because his attendance was spotty, he often arrived late, and the station manager found that he was "not together enough mentally to handle the job."

On March 22, 2005, Harry Stevens, a Nurse Practitioner, noted that plaintiff had pain in his back and in both shoulders, and sometimes experienced numbness in both hands. Plaintiff was taking Prozac. Stevens noted that plaintiff had reduced range of motion in his right shoulder.

On June 6, 2005, plaintiff was evaluated at the Portland VA Hospital for mental disorders, including depressive disorder NOS. His problems were listed as including amphetamine dependence and alcohol dependence in early remission. Plaintiff reported back pain, pain in both shoulders, intermittent numbness in both hands, and tingling in his left leg and thigh. Plaintiff's Global Assessment of Functioning (GAF) was rated at 60.[1]

Plaintiff participated in group therapy for substance abuse at Cascadia Behavioral Healthcare during September, October, and November, 2005. A chart noted dated September 4, 2005, indicated that plaintiff was living in a shelter and had a history of

---

[1]A GAF of 51-60 indicates "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders, American Psychiatric Association, 4th Edition (1994) (DSM IV), p. 32.

FINDINGS AND RECOMMENDATION - 6

depression and borderline personality. Plaintiff reported that he had used cocaine for approximately six months during the previous year, and reported daily thoughts of suicide. The evaluator opined that plaintiff had poor judgment and limited insight, and noted that plaintiff's chronic pain and fatigue complicated treatment for his substance abuse. A GAF score of 50 was assessed.[2]

Plaintiff was evaluated by Michael Uhl, a Physical Therapist, on September 13, 2005. Uhl noted that plaintiff continued to experience pain in both shoulders, and that plaintiff's right shoulder was particularly aggravated by repeated elevation. He also noted reduced range of motion and weakness in plaintiff's right shoulder, and noted that plaintiff had moderate tenderness on palpation in the right supraspinatus area and increased laxity in the left AC joint. Plaintiff also had positive impingement sign on the right. Uhl opined that plaintiff's pain likely resulted from a right rotator cuff tear and cervical degenerative disc disease, and recommended that plaintiff avoid repeated elevation of the shoulder.

Electrodiagnostic studies conducted by the VA on October 4, 2005, showed mild median neuropathy across the carpal tunnel in both hands and mild ulnar neuropathy in the left elbow. Nurse Practitioner Stevens indicated that plaintiff needed occupation and physical therapy and splints to be used at night for his carpal tunnel syndrome.

On November 23, 2005, plaintiff sought treatment for worsening neck pain. Plaintiff reported that he had been clean and sober for 5 months, and offered to take a urine test. On

---

[2]A GAF score of 50 indicates "serious impairment," such as an inability to keep a job. Diagnostic and Statistical Manual of Mental Disorders, American Psychiatric Association, 4th Edition Text Revision (2000), p. 34.

FINDINGS AND RECOMMENDATION - 7

November 28, 2005, Stevens informed plaintiff that a urine drug screen had come back negative, and that he would be providing plaintiff Tramadol for his pain.

Jennifer Blackman, a Physical Therapist, treated plaintiff for neck and shoulder pain. Blackman noted that plaintiff had scapular winging with elevation on the right and was unable to hold scapular retraction without trembling. She advised plaintiff to avoid repeated shoulder elevation. On December 13, 2005, Blackman noted that plaintiff continued to have weakness and fatigue, and could not perform eccentric contractions without trembling.

Dr. Susan Smith evaluated plaintiff on January 11, 2006. Dr. Smith noted that plaintiff had a history of depression, and that plaintiff reported difficulty sleeping, anhedonia, low energy, poor appetite, difficulty concentrating, and intermittent suicidal ideation. Plaintiff told Dr. Smith that he had been having panic attacks two or three times a week, with shortness of breath, severe anxiety, chest tightness, sweating, and palpitations. He also reported that he heard voices saying bad things about him when he was very depressed, and his score on an evaluation indicated that he had moderately severe depression. Dr. Smith characterized plaintiff's mood and affect as moderately anxious and depressed, and noted that plaintiff exhibited agitated psychomotor activity and pressured speech. She characterized his concentration, attention, insight, and judgment as moderately to severely impaired. Dr. Smith diagnosed major depressive disorder, recurrent, severe, with psychotic features; dysthymia; panic disorder; and alcohol and stimulant abuse in early remission. She rated plaintiff's GAF at 40, which is indicative of an inability to work.[3] Dr. Smith opined that plaintiff's symptoms worsened with stress, and that his homelessness and lack of a stable support network

---

[3]See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2000), P. 34.

FINDINGS AND RECOMMENDATION - 8

complicated his situation and interfered with his substance abuse treatment. She stated, however, that plaintiff had abstained from substance abuse for several months. Dr. Smith increased plaintiff's dosage of Prozac, and started a trial dose of an anti-psychotic medication to treat his auditory hallucinations.

Dr. Juliana Ee evaluated plaintiff on November 9, 2006. Plaintiff reported problems with concentration, fatigue, and difficulty making decisions. He said that he sometimes heard voices, but did not understand them, because they were in different languages. Plaintiff denied visual hallucinations or delusions. He reported an extensive history of drug and alcohol abuse beginning when he was a teenager. Plaintiff said that he was currently using alcohol "here and there," had last used methamphetamine 1-2 years earlier, and last used marijuana five years earlier. Dr. Ee noted that plaintiff had lost his housing the previous month because of cocaine use, and that records indicated a methamphetamine relapse in June, 2006. She added that a "[s]ubstance abuse assessment on 6/29/06 shows that his most recent use of many drugs was about one year ago."

Plaintiff told Dr. Ee that he had mostly worked at manual labor jobs since leaving active military duty. He said that he had worked as a millwright, maintenance worker, mechanic, and gas station attendant, and that he had left his last position, with Jiffy Lube, three or four years earlier because of shoulder pain. Plaintiff also told Dr. Ee that "over the years, his ability to stay employed long-term has been disrupted by 'addiction problems,' drug treatments, arrests and incarcerations." Dr. Ee opined that plaintiff's judgment appeared to be "limited as evidenced by his ongoing difficulty in resisting his urge to use illicit substances that have negative consequences for his life."

FINDINGS AND RECOMMENDATION - 9

Dr. Ee diagnosed major depressive disorder with anxiety attacks and auditory hallucinations secondary to polysubstance abuse or dependency. She characterized plaintiff's alcohol abuse or dependence as being in partial remission, noted that plaintiff had recently relapsed on amphetamines, and rated plaintiff's GAF at 45, which she noted indicated "serious difficulty in social or occupational functioning." Dr. Ee opined that it was "more likely than not that his symptoms of mood disorder are secondary to polysubstance abuse or dependence."

Based upon a physical evaluation conducted on November 9, 2006, Robert Welsh, PAC, opined that plaintiff's degenerative disc disease with multiple fractures resulted in a 40-50% loss of range of motion, strength, and coordination, resulted in fatigability of the cervical spine, and caused some loss of function in the thoracolumbar spine. Welsh opined that plaintiff's bilateral carpal tunnel syndrome resulted in the loss of 5 to 10 degrees of range of motion, and in reduction of strength and coordination. Right ulnar neuritis was noted, which Welsh opined would result in a loss of 5 to 10 degrees in range of motion at the elbows, a reduction of strength and coordination, and fatigability. Welsh also opined that plaintiff would lose range of motion, strength, and coordination, and would experience fatigability in his shoulders because of bilateral rotator cuff impingement syndrome with degenerative arthritis. He further opined that plaintiff "would be expected to work in a sedentary type employment if he could tolerate sitting with his mid back fractures," but that this was "highly unlikely." Welsh noted that plaintiff was "homeless and his work life is unattended to." He added that, because plaintiff was homeless, "he could not tolerate sitting, standing, or walking for any extended period, although he . . . states he can walk up to a mile, if he needs to." Welsh's report was approved by Dr. Paul Matson, a staff physician.

FINDINGS AND RECOMMENDATION - 10

In a letter dated November 24, 2006, the VA informed plaintiff that he was entitled to a nonservice-connected pension based upon a "serious major depressive disorder that causes serious difficulty in social and occupational functioning." The letter added that the evidence showed that plaintiff was "unable to secure and follow a substantially gainful occupation" because of his disability. The letter indicated that the finding of disability was based upon evidence that included VA examinations conducted on November 9, 2006.

### Hearing Testimony

1. Plaintiff's Testimony

Plaintiff testified as follows at the hearing.

Plaintiff was homeless at the time of the hearing, and usually slept in a shelter at night. Plaintiff is a methamphetamine addict, and had last used that drug approximately a year and a half earlier. Plaintiff had used cocaine for several weeks during 2006, which resulted in his loss of housing. Though he has used many drugs in the past, his mental and physical problems persist even when he is not using drugs.

Plaintiff has seen UFOs and alien beings in the past. He hears both friendly and unfriendly voices. The unfriendly voices tell him to do self-destructive things. Plaintiff thinks about suicide regularly, and sometimes rides his bicycle erratically in traffic. He has emotional outbursts, during which he loses concentration and cannot remember what he is doing.

Plaintiff's neck, back, and shoulder pain would not allow him to lift a gallon of milk, and lying down provided the only relief from pain in "multiple places" in his body. He could sit for about 40 minutes without changing positions, then needed to walk about for 20

minutes before sitting again. Plaintiff used to be a competitive dancer, but can no longer dance. He could be active for three hours at most before needing to lie flat because of the pain.

2. Vocational Expert

The ALJ posed a hypothetical to the VE describing an individual who was limited to light work; could not be near hazards; could not use ropes, ladders, or scaffolds; could only occasionally crawl or perform overhead work; was unable to constantly handle or grasp; and was limited to simple, routine, repetitive work with no interaction with the public and only occasional interaction with co-workers. The VE testified that such an individual could not perform any of plaintiff's past relevant work, but could perform small product assembly, packaging and sorting, and light janitorial work.

In response to further questioning by the ALJ, the VE testified that an individual who would have two unscheduled absences per month could not sustain competitive employment. The VE also testified that a worker whose deficiencies in concentration, persistence, and pace interfered with the completion of tasks up to one third of the workday could not sustain competitive employment. In response to questioning by plaintiff's former attorney, the VE testified that the need to take a 10-minute break following every 40 minutes of work would preclude competitive employment.

**ALJ's Decision**

The ALJ found that plaintiff met the insured status requirements of the Act through June 30, 2006, and that he had not engaged in substantial gainful activity since the alleged onset of his disability on February 1, 2005.

The ALJ next found that plaintiff's "back disorder, depression, anxiety, a substance addiction disorder, and a shoulder injury" were "severe impairments" within the meaning of the Act. He further found that these impairments, alone or in combination, did not meet or medically equal any of the impairments in the "listings," 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)).

The ALJ found that plaintiff had the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally, could stand and walk 6 hours out of an 8-hour day, and could sit without limitation. He found that plaintiff should avoid hazards, could not climb ladders, ropes, or scaffolds, could only occasionally crawl, was limited to frequent–as opposed to constant–handling and grasping, and was limited to simple, routine, repetitive work with no public interaction and only occasional co-worker interaction. The ALJ also found that plaintiff would be absent from work two times per month, and that he experienced deficiencies of concentration, persistence, and pace which would interfere with his completion of tasks for up to one-third of the workday.

The ALJ noted that plaintiff had testified that he had seen aliens and UFOs in the past, heard voices and had suicidal thoughts several times per month, became emotionally unstable and shut down about twice per week, sometimes acted out and threw things, could not lift a gallon of milk without pain, could not sleep more than 2 hours at a time, could sit 40 minutes, napped every day, and had to lie down after being active for 3 hours. The ALJ

FINDINGS AND RECOMMENDATION - 13

found that, though plaintiff's impairments could reasonably be expected to produce some of the symptoms alleged, plaintiff's statements about the intensity, persistence and effects of these symptoms were not credible "to the extent they are inconsistent with the residual functional capacity assessment" set out above.

The ALJ concluded that, given his age, education, work experience, residual functional capacity, and impairments, "including the substance abuse disorders," plaintiff could perform no jobs that existed in substantial numbers in the national economy. Accordingly, the ALJ concluded that plaintiff was technically "disabled" within the meaning of the Act. However, he further concluded that plaintiff was not entitled to disability benefits because he had not sustained his burden of establishing that "his substance addiction disorder" was not a "contributing factor material to the finding of disability."

At the conclusion of the hearing, the ALJ had indicated that he intended to order that a consultative psychological evaluation be conducted before he reached a decision. In his decision, the ALJ noted that this had been his intention, but that plaintiff was currently incarcerated, and he would "not delay a decision to wait indefinitely for the claimant's release." He added that "[t]he validity of any current consultative examination is questionable without an extended period of abstinence from drugs and alcohol."

In reaching these conclusions, the ALJ gave "little weight" to the VA's determination that plaintiff was entitled to non-service disability benefits, on the grounds that "the basis for the rating is unknown." He added that plaintiff's counsel had "provided only the first page of the rating decision and has indicated the full rating decision is not obtainable due to the claimant's incarceration." The ALJ also stated that Dr. Ee, who had evaluated plaintiff in

connection with his application for VA disability benefits, "opined it is more likely than not that his mood disorder is secondary to his polysubstance abuse or dependence."

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's treating and examining doctors, provided inadequate reasons for rejecting the VA's finding of disability, improperly rejected plaintiff's testimony, and posed an invalid hypothetical to the VE. He contends that the decision of the Commissioner should be reversed, and that the action should be remanded to the Agency for an award of benefits. In the alternative, he contends that the action should be remanded, with instructions, for further proceedings.

As noted above, the ALJ concluded that plaintiff was disabled within the meaning of the Act, but found that he is not entitled to disability benefits because plaintiff had not established that his substance abuse was not "material to the finding of disability." Because the ALJ found that plaintiff was disabled, in evaluating his decision, the critical issue is his conclusion as to the effect of plaintiff's substance abuse. Under these circumstances, a brief summary of the law concerning the effect of substance abuse on eligibility for disability benefits is necessary.

In 1996, Congress amended the definition of disability under the Social Security Act to provide that "[a]n individual shall not be considered to be disabled . . . if drug addiction or alcoholism would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether substance abuse is a contributing factor that is material to the determination of disability, the "key factor" is whether the individual in question would still be found to be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). In evaluating whether an individual would be disabled if he or she stopped using drugs or alcohol, the Commissioner is required to examine which of the claimant's physical or mental limitations would remain if

the individual stopped using drugs or alcohol, and then determine whether any of the remaining limitations would be disabling.  20 C.F.R. § 404.1535(b)(2).

1.  ALJ's Evaluation of Opinions of Treating and Examining Doctors

a.  Applicable rules

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  Accordingly, an ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions.  Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995).

The opinions of examining physicians are entitled to greater weight than the opinions of non-examining physicians.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons that are supported by substantial evidence in the record for rejecting an examining physician's opinion that is contradicted by another physician.  Andres v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

b.  Analysis

The ALJ considered both the mental evaluations performed by Dr. Smith and Dr. Ee, and the physical evaluation performed by Dr. Welsh, in which Dr. Matson explicitly

concurred. The ALJ did not reject the opinions of Drs. Smith and Ee which supported the conclusion that plaintiff was disabled. Instead, he gave "great significance" to Dr. Smith's opinion that plaintiff had multiple mental impairments, including major depressive disorder with psychotic features and dysthymia, and to the GAF score of 40 Dr. Smith assessed. The ALJ cited that evidence in concluding that plaintiff was disabled because he would be absent from work at least two times per month, and would have deficiencies in concentration, persistence, and pace that would interfere with completion of tasks during up to one-third of the workday. However, based upon Dr. Ee's opinion that plaintiff's symptoms of mood disorder were more likely than not "secondary to polysubstance abuse or dependence," and her diagnosis of a major depressive disorder with episodes of anxiety attacks and auditory hallucinations secondary to that dependence and abuse, he concluded that plaintiff had not shown that his substance abuse was not material to the finding of disability.

The ALJ's conclusion that plaintiff's mental impairments are disabling is amply supported by the record. However, his conclusion that plaintiff would not be disabled in the absence of substance abuse is not. As noted above, in determining whether a disabled substance abuser is entitled to disability benefits, the "key factor" is whether the individual would still be found to be disabled if he or she stopped using drugs or alcohol. The ALJ's conclusion that plaintiff's mental impairments would not be disabling if he did not use drugs and alcohol is flawed in several respects. First, read in the context of her larger evaluation, Dr. Ee's opinion that plaintiff's depressive disorder was secondary to polysubstance abuse or dependency does not indicate that plaintiff's disorder would end if plaintiff was not using drugs and alcohol. Dr. Ee explicitly noted that, though plaintiff had a methamphetamine relapse in June, 2006, a substance abuse assessment indicated that his most recent use of

FINDINGS AND RECOMMENDATION - 18

many drugs had occurred about a year earlier.  She also emphasized that plaintiff's difficulty

in social and occupational functioning was "secondary to his life-long history [of]

polysubstance abuse or dependence."  In the context of a record showing that plaintiff was at

least largely abstaining at the time of her evaluation, Dr. Ee's assessment indicates that

plaintiff had been severely damaged by decades of polysubstance abuse, and would likely

remain disabled even if his abuse were in sustained remission.

     This conclusion is consistent with the evaluation of Dr. Smith, upon which the ALJ's

finding of disability was largely based.  The record establishes that plaintiff tested negative

for drug use on November 28, 2005, and Dr. Smith specifically noted that plaintiff had been

abstaining from drug and alcohol use for several months at the time of her examination on

January 11, 2006,  which indicated that plaintiff had disabling mental impairments.  Given

that Dr. Smith assessed the very impairments that the ALJ found established disability during

a period of significant abstinence, the ALJ's conclusion that plaintiff would not be disabled if

he did not use drugs or alcohol is not well founded.

     Plaintiff contends that, regardless of whether his mental impairments were disabling

in the absence of substance abuse, the ALJ should have found that he was entitled to

disability benefits based upon his physical impairments alone.  I agree.  Plaintiff's

well-documented physical impairments exist whether or not plaintiff uses drugs and/or

alcohol, and the ALJ did not provide legally sufficient reasons for rejecting the conclusions

of PAC Welsh and Dr. Matson concerning the severity of those impairments.

     As noted above, Welsh examined plaintiff, and Dr. Matson concurred in Welsh's

evaluation.  Based upon an orthopedic examination, Welsh and Dr. Matson opined that

plaintiff's degenerative disc disease resulted in a 40-50% loss of range of motion, strength,

and coordination; resulted in fatigability of the cervical spine; and caused loss of function in the thoracolumbar spine. They also noted ulnar neuritis and bilateral rotator cuff impingement syndrome with degenerative arthritis, and opined that it was unlikely that plaintiff could tolerate the sitting required to perform even sedentary work because of his "mid back fractures." Though plaintiff had stated that he could walk for up to a mile "if he needs to," they also opined that he could not tolerate standing or walking for "any extended period . . . ."

The ALJ rejected the opinion of Welsh and Dr. Matson based upon Welsh's statement that plaintiff could not tolerate sitting, standing, or walking for any extended period "because he is homeless . . . ." The ALJ asserted that their opinion was based upon plaintiff's homelessness rather than his medical impairments.

Welsh's assertion that plaintiff could not perform certain activities because he was homeless is odd. However, in the larger context of a report thoroughly documenting plaintiff's objective orthopedic impairments, this peculiarity is not a sufficient basis for rejecting the opinion of Welsh and Dr. Matson. An objective orthopedic evaluation showed that plaintiff was significantly impaired by degenerative disc disease in his back, injuries to his back and shoulder, degenerative arthritis, and ulnar neuritis. In the context of this evaluation, it appears that Welsh and Dr. Matson concluded that plaintiff could not tolerate extended sitting, standing, or walking, because of the objectively verifiable orthopedic impairments. The ALJ did not provide sufficient reasons for rejecting that conclusion.

When an ALJ provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). A reviewing court then has discretion to remand the action for

further proceedings or for a finding of disability and an award of benefits. See, e.g, Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, the ALJ did not provide legally adequate reasons for rejecting the opinions of the medical experts who evaluated plaintiff's mental and physical impairments. There are no outstanding issues to be resolved before a determination of disability can be made, and it is clear that if the opinions of these doctors had been credited, a finding of disability would be required. Under these circumstances, the action should be remanded for a determination of disability.

2. Other Issues

My conclusion that the opinions of plaintiff's examining physicians should be credited and that this action should be remanded for an award of benefits makes it unnecessary to reach the balance of plaintiff's arguments. However, in order to create a full record for any subsequent review, I will briefly address the remaining issues.

a. Rejection of VA's Disability Determination

In McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002), the court noted that, though a "VA rating of disability does not necessarily compel the SSA to reach an identical result . . . the ALJ must consider the VA's findings in reaching his decision." The court added that, given the "marked similarity" between Social Security and VA disability programs, an ALJ must "ordinarily give great weight to a VA determination of disability." Id. If he does not accord this weight to a VA disability determination, the ALJ must "give persuasive, specific, valid reasons for doing so that are supported by the record." Id.

The ALJ's rejection of the VA's determination on the grounds that "the basis of the rating is unknown" does not accurately characterize the record, and does not satisfy these requirements. Though the entire VA determination is not part of the record, the portions that are included indicate that the VA disability determination was based upon the VA examination of November 9, 2006, which is discussed at length above, and upon VA medical records, many of which are included in the record. It is clear that the VA's disability determination depended in large measure on the evaluations, discussed above, with which the ALJ had substantial disagreement. Because the ALJ failed to provide valid reasons for rejecting the opinions of VA examining medical sources, he failed to provide sufficient reasons for rejecting the VA's disability determination which was based upon those opinions.[4]

---

[4]If a disabled claimant could qualify for benefits under the VA system even if substance abuse was material to the finding of disability, plaintiff's qualification for benefits under the VA system would not be relevant here. However, that is not the case: Under the VA disability system, like the Social Security system, a claimant whose substance abuse is material to a finding of disability is not entitled to disability benefits. See 38 U.S.C. § 1521(a); 38 C.F.R. § 3.301(b); 38 U.S.C. § 105(a); 38 C.F.R. § 33.01(a).

b. Conclusion That Plaintiff Was Not Wholly Credible

  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment, the ALJ  may not discredit the claimant's testimony concerning the severity of symptoms merely because it is unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc).  Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

  An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

  Here, there was objective medical evidence that plaintiff's impairments would cause some degree of symptoms, and there was no evidence of malingering.  The ALJ therefore was required to provide clear and convincing evidence supporting his conclusion that plaintiff was not wholly credible.

FINDINGS AND RECOMMENDATION - 23

The ALJ did not provide such support here. He rejected plaintiff's testimony in part on the grounds that the medical evidence did not support the level of pain that plaintiff alleged. This is contrary to the proscription, cited above, on rejecting testimony about the level of symptoms experienced on the grounds that it is inconsistent with objective medical evidence.

The ALJ rejected plaintiff's testimony as to the severity of his symptoms in part on plaintiff's alleged declaration that "he could walk as far as he wanted to." Plaintiff correctly notes that the ALJ did not provide a citation for this assertion. Like plaintiff, I cannot locate this statement in plaintiff's testimony, and have not seen it in any other material. Plaintiff is likely correct in asserting that this statement probably came from Welsh's report that plaintiff stated that he could walk up to a mile if he needed to. Plaintiff is correct in asserting that this is not the same as stating that he could walk as far as he wanted to. He is also correct in asserting that the ALJ's misstatement as to his ability to walk does not provide substantial support for the conclusion that he is not credible.

The ALJ also asserted that plaintiff was not wholly credible because, though at the hearing he reported experiencing visual hallucinations, during his November, 2006 evaluation, he reported only auditory hallucinations. This is not a clear and convincing reason for discounting plaintiff's credibility. The hearing was held a year and a half after the evaluation, and it is possible that plaintiff began to experience visual hallucinations during that time. Given that plaintiff's mental condition appears to have worsened significantly over time, it is entirely possible that, by the time of the hearing, plaintiff experienced symptoms which he had not experienced earlier. If there was some uncertainty as to plaintiff's mental

condition at the time of the hearing, the ALJ could have referred plaintiff for a mental evaluation, as he indicated he would at the close of the hearing.

Where an ALJ improperly rejects a claimant's testimony regarding his limitations, the testimony is credited as a matter of law.  <u>Varney v. Secretary of Health and Human Services,</u> 859 F.2d 1396, 1401 (9th Cir. 1988).  Where, as here, there are no outstanding issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited, the court should remand for a finding of disability and an award of benefits.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996).

c. <u>Adequacy of ALJ's Hypothetical</u>

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments and limitations.  <u>E.g.</u>, <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing <u>Baugus v. Secretary of Health and Human Services</u>, 717 F.2d 443, 447 (8th Cir. 1983)).  The ALJ's depiction of the claimant's limitations must be "accurate, detailed, and supported by the medical record."  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value.  <u>Gallant</u>, 753 F.3d at 1456.

The ALJ's hypothetical did not meet these requirements.  As noted above, the ALJ's hypothetical described an individual who was limited to light work; could not be near hazards; could not use ropes, ladders, or scaffolds; could only occasionally crawl or perform overhead work; was unable to constantly handle or grasp; and was limited to simple, routine, repetitive work with no interaction with the public and only occasional interaction with

co-workers.  This hypothetical omitted the mental limitations described by Dr. Smith, the

physical limitations set out in the evaluation of Welsh and Dr. Matson, and a number of

plaintiff's allegations that were not properly discredited.  Under these circumstances, the VE

testimony that the individual described could perform certain work lacks evidentiary value.


## Conclusion

A judgment should be entered REVERSING the decision of the Commissioner and

REMANDING this action to the agency for a finding of disability and an award of benefits.


## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due May 14, 2010.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 27th day of April, 2010.


John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION - 26